```
___ FILED    ___ ENTERED
___ LODGED   ___ RECEIVED
```

OCT  6 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

The Hon. Mary Alice Theiler

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER MICHAEL HARRIS,

Defendant.

CASE NO. MJ15-460

COMPLAINT

18 U.S.C. §§ 1791(a)(2)

BEFORE United States Magistrate Judge Mary Alice Theiler, Seattle, Washington. The undersigned complainant being duly sworn states:

### Count 1

### Possession of a Controlled Substance in Prison

On or about May 25, 2015, in the City Seatac, Washington, within the Western District of Washington, CHRISTOPHER MICHAEL HARRIS, an inmate in the Seatac Federal Detention Center, did knowingly obtain and possess prohibited objects, to wit: two (2) balloons containing 1,1-dimethyloctyl homologue of CP 47,497, known as cannabicyclohexanol ("synthetic marijuana" or "Spice"), a Schedule I controlled substance; and did knowingly obtain and

//
//
//

Complaint: Harris - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

possess objects that threaten the order, discipline, and security of the prison and the life, health, and safety of an individual, to wit: two (2) balloons containing contraband ("synthetic marijuana" or "Spice").

All in violation of Title 18, United States Code, Section 1791(a)(2), (b)(2), (b)(5), (d)(1)(A) & (d)(1)(G).

**The undersigned, Clinton W. Barefoot, complainant being duly sworn states:**

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since 2011. As a Special Agent, I am responsible for investigating violations of federal criminal laws. I have investigated and/or participated in investigations, including those pertaining to narcotics, conspiracy offenses, and those related to contraband in federal detention centers. I have acquired knowledge and information about these offenses and the various means and methods by which they are executed, through formal and informal training, other law enforcement officers and investigators, informants, individuals I have interviewed, as well as through my participation in other investigations. I am currently assigned to the Seattle Safe Streets Task Force (SSSTF) of the Seattle Division of the FBI, which focuses on both gang-related and violent crimes. I am currently authorized to investigate and enforce violations of federal criminal statutes, including those found in Title 18 and 21 of the United States Code.

2. The statements contained in this affidavit are based, in part, on my own investigation and the investigation of other federal agents, local investigators, and on information related to me by others personally or in written reports. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of specific applications, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3. Investigators at Federal Detention Center (FDC) Seatac developed intelligence that inmate Christopher Harris, date of birth (DOB) xx/xx/1978, BOP No. 44514-086, was

involved with the introduction of a form of synthetic marijuana, known as "K2 Spice", into the institution.

4. On or about May 25, 2015, investigators listening to telephone calls between Harris and Aimee Chevalier, Harris' spouse, noted the following: During a telephone call that was about one minute in duration, Harris asked Chevalier "Is everything good?" to which Chevalier replied: "Yes". The call led investigators to review telephone calls covering the preceding days. On May 23, 2015, at approximately 2:31 PM, Harris placed a telephone call to Chevalier and asked "Are you going to be empty tomorrow?" Chevalier replied "No shouldn't be". On the same date, at approximately 7:54 PM, Harris called Chevalier again. Chevalier told Harris: "I'm trying to get that shit together for that part for dad." Harris responded: "What about that other shipment?" Chevalier said: "I'm working on that too, I'm working on it!" Harris said: "I don't think you understand what I'm saying". Chevalier replied: "I do understand. I get it, I know!" Harris said: "I just need to know if it's a yes or no." Chevalier responded: "Call me in the morning".

5. On May 24, 2015, at 6:00 PM, Harris called Chevalier and asked: "Did you get everything together and worked out?" Chevalier replied: "I will take care of it". On the same date, at 8:37 PM, Harris called Chevalier and asked: "How's everything going?" Chevalier replied: "Good." Harris asked: "Good, as could be expected?" Chevalier replied: "Yes". Harris stated: "Just wanted to make sure it's all worked out."

6. On May 25, 2015, Chevalier and a young boy arrived at FDC Seatac for visitation with Harris. At approximately 11:45 AM, Chevalier and Harris began their visitation. Investigators noted that Harris was behaving in a manner that aroused the suspicion of officers in the visitation room. Specifically, Officers reported that Harris looked nervous, was shaking his legs, and continuously looking around. Officers observed Harris lean over and join hands with Chevalier. Officers observed Chevalier pass something to Harris' left hand, and then place her hand over his in a manner which concealed the item(s) from view. Harris pulled the young

boy close to his body, and Harris placed his hands under his own legs. Harris then brought his hand from under his leg to his mouth, and Officers observed Harris place something in his mouth. Harris again grabbed the boy and hugged him. Officers described that Harris looked as though he were trying to swallow something while obscured by the young boy.

7. Officers reported their observations to investigators in a control room at the FDC and video footage of the visit was reviewed. Review of the camera footage appeared to confirm that Harris had received, and swallowed, unknown item(s).

8. At approximately 12:20 PM, Harris was removed from the visitation area and visually searched. Investigators asked Harris if he had any contraband on or in his person, to which he replied that he did not. Harris was then placed in a Rapid Scan body scanning machine. Review of the scan determined that Harris had an unknown foreign object inside his body. Harris was taken to a cell in the Health Services department for observation.

9. On May 25, 2015 at approximately 3:10 PM, while still under observation in the Health Services cell, Harris asked Officers to speak with someone. Investigators interviewed Harris as per Harris' request. After being advised of, and waiving, his *Miranda* warnings, Harris provided that he had in fact attempted to introduce narcotics into the facility, and had been doing so for 7-8 months. Harris stated that he had swallowed two balloons which contained K2 Spice. Harris agreed to comply with procedures, and notify the watch Officer when he was ready to make a bowel movement. At approximately 7:06 PM, Harris provided a stool sample. The sample contained two green balloons, each of which held a green leafy substance. Field narcotic testing is ineffective in the identification of synthetic Marijuana, and therefore did not provide a positive identification. Subsequent stool samples did not contain foreign items. Harris was again asked if he had any additional items in his body, to which he replied that he did not. Harris was again searched via body scanning machine, which yielded a negative result. Harris was subsequently placed in the Special Housing Unit (SHU) area of the detention center.

10. The Sea-Tac Federal Detention Center is a "prison" as that term is defined by Title 18, United States Code, Section 1791(d)(4). Harris is an inmate of the Sea-Tac Federal Detention Center. Based on my training and experience I believe that possession of synthetic marijuana in prison can threaten the order, discipline, and security of the prison and the life, health, and safety of individuals in the prison.

11. Based on the foregoing, I submit that there is probable cause to believe that HARRIS committed the crime of *Possession of a Controlled Substance in Prison,* in violation of Title 18, United States Code, Section 1791 (a)(2).

Clinton W. Barefoot, Complainant
Special Agent
Federal Bureau of Investigation

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

DATED this 9 day of October, 2015.

MARY ALICE THEILER
United States Magistrate Judge